CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 25 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NANCY H. BERRY | ) |
| Plaintiff, | ) Civil Action No. 7:05CV00279 |
| v. | ) **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying the plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Nancy H. Berry, was born on March 1, 1945. Ms. Berry completed the eleventh grade, and has past work experience as a shipping and packing clerk, order puller, food

1

server, and laundry laborer. She last worked on a regular basis in 2002. On October 3, 2002, Ms. Berry protectively filed an application for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that she became disabled for all forms of substantial gainful employment on August 3, 2002, due to arthritis and associated pain. Ms. Berry now maintains that she has remained disabled to the present time. The record reflects that the plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally, 42 U.S.C. §§ 414 and 423.

Ms. Berry's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 21, 2004, the Law Judge determined that the plaintiff is not disabled. The Law Judge found that the plaintiff suffers from arthritis with associated pain in the upper and lower extremities. The Law Judge further determined that while Ms. Berry's impairments are severe within the meaning of the administrative regulations, they do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(d) and 416.920(c)-(d). The Law Judge concluded that Ms. Berry retains the residual functional capacity to perform a significant amount of work at the light level of exertion. Given such a residual functional capacity, the Law Judge held that the plaintiff is capable of returning to her past work as a pulling orders clerk. Accordingly, the Law Judge concluded that Ms. Berry is not disabled, and therefore she is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(e) and 416.920(e). Plaintiff then filed a request for review with the Social Security Administration's Appeals Council. On April 1, 2005, the Appeals Council denied the plaintiff's request and adopted the Law Judge's opinion as the final decision of the

Commissioner. Having exhausted all available administrative remedies, the plaintiff now appeals to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382(c)(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) the subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Ms. Berry's medical problems and the extent to which they limit her ability to work. The Law Judge carefully considered the plaintiff's subjective statements and the extent to which they were supported by and consistent with the medical records. Although Ms. Berry has arthritis, the objective medical evidence and the medical opinions on record support the Law Judge's determination that this condition does not preclude all substantial gainful activity. The record supports the Law Judge's finding that the plaintiff retains the

residual functional capacity to return to her past work as a pulling orders clerk.[1]

In deciding that Ms. Berry is not totally disabled, the Law Judge discredited her allegations regarding her mental and physical limitations. The Law Judge emphasized that the claimant's allegations regarding her limitations and their impact on her ability to work are not established by medical evidence and medical source opinions, and are inconsistent with the information she provided to treating sources. The Law Judge found that the plaintiff's mental impairments do not impose significant functional limitations. As the Law Judge pointed out, the plaintiff was never referred to a mental health professional, and reported that she got along well with people. (TR 90). The plaintiff also has taken Prozac, which helped her symptoms and helped her to sleep. (TR 145). In addition, the plaintiff's statements about her physical impairments are inconsistent with the medical evidence, her own statements to treating physicians, and medical source opinions. The plaintiff testified that she could not work due to pain in her back, neck, and arm. (TR 229). At an examination in June, 2002, it was found that the plaintiff's gait was normal and that the plaintiff could undergo exercise testing or participate in an exercise program. (TR 151). In October of 2002, the plaintiff reported that her pain did not worsen with activity, and that she could ambulate without difficulty. (TR 125). The plaintiff was offered treatment in the form of a clinic visit for the chronic pain, or surgery, and she declined both treatment options. (TR 126). The plaintiff also indicated that her daily activities

---

[1] The plaintiff testified that her work as a pulling orders clerk involved lifting up to seventy pounds, which would place the job in the heavy range of work. (TR 238). The position is classified as light, however, in The Dictionary of Occupational Titles. (TR 238). The issue of whether the plaintiff can perform her past relevant work is determined by examining the demands of the plaintiff's past relevant work, "either as the claimant actually performed it or *as generally performed in the national economy.*" See 20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2) (emphasis added).

4

included cleaning, shopping, watching television, reading, and going to church and to visit her mother on Sundays. (TR 86-89). Upon reviewing the record, the court finds that the Law Judge's decision to not fully credit Ms. Berry's allegations is supported by substantial evidence.

Plaintiff's medical records reveal an extensive history of examinations based upon complaints of chronic pain. A report by Dr. Brian A. Torre, from October 23, 1991, noted that Ms. Berry had complained of multiple aches and pains throughout her wrists, elbow, and fingers, as well as tingling in her fingers. (TR 120). Ms. Berry was given a fifteen percent permanent and partial impairment rating for her right hand. (TR 120). Dr. Torre found that the plaintiff had a full range of motion in her wrist and fingers, with no swelling and mild tenderness. (TR 120).

A Physical Residual Functional Capacity Assessment completed in February of 2002 by a State Agency Medical Consultant concluded that Ms. Berry could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (TR 133). The ability to push or pull was limited in the lower extremities. (TR 133). The plaintiff was instructed to avoid activities involving more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. (TR 134). The plaintiff refused to visit a chronic pain clinic, and was told to continue physical therapy. (TR 134). At that time, the plaintiff described her activities as cooking, light cleaning, shopping, watching television, and visiting her mother and going to church on Sunday. (TR 134).

On March 11, 2002, the plaintiff was evaluated for knee pain by Dr. John Mann. (TR 130). He reported that the x-rays showed maintenance of the plaintiff's medial and lateral joint space, and mild lateral osteophyte formation bilaterally. (TR 130). She was prescribed Vioxx, an anti-inflammatory medication. (TR 130).

At an examination by Dr. Kelly A. Stacy on June 13, 2002, the plaintiff reported that she had chronic pain all over, and has had such pain since 1991. (TR 150). A previous x-ray showed mild degenerative spondylosis involving upper thoracic spine. (TR 150). Despite treatment, she reported little improvement. (TR 150). Dr. Stacy said that the plaintiff could undergo exercise testing or participate in an exercise program. (TR 151). The plaintiff reported that she cried a lot, but felt better, and that she had never taken anything for depression and did not want to start taking antidepressants. (TR 150).

Although a report by Dr. Murray E. Joiner in July, 2002, recommended that the plaintiff remain out of work, by August of 2002, the alleged onset date, the plaintiff's restrictions were revised. She could not lift over twenty to twenty-five pounds, could not perform extended or repetitive work at or above shoulder level, and could not work in extreme cold. (TR 118).

The plaintiff was seen by Kevin Minix, APC, on August 15, 2002. The plaintiff complained of pain and multiple joint swellings. (TR 127). The plaintiff's symptoms had appeared six years before, and had worsened. (TR 127). Mr. Minix found that the plaintiff could rise, sit, and ambulate without difficulty, although her movements were "slow and guarded." (TR 127). There had been no significant findings based upon x-rays completed the previous spring. (TR 127). Treatment with anti-inflammatories and physical therapy had been unsuccessful. (TR 127).

The plaintiff had an MRI on September 25, 2002. (TR 148). The plaintiff was found to have severe degeneration and a baker's cyst continuing into the proximal calf. (TR 207). In addition, there appeared to be a laxity to the fibular collateral ligament, although a definite tear was not identified. (TR 148).

6

In October of 2002, the plaintiff was seen at the Bradley Free Clinic; she complained of knee, neck, and arm pain. (TR 166). She was also prescribed Prozac for depression, crying spells, and insomnia. (TR 166). At a later visit in May, 2003, for similar complaints, the plaintiff was prescribed Prozac and pain medications. (TR 163).

On October 3, 2002, Dr. Anikar Chharbra performed a follow-up to Ms. Berry's MRI and reviewed her complaints of joint pain. (TR 125). Ms. Berry reported that her symptoms had not changed over the last three to four months, that she continued to work, and that she could ambulate without difficulty. (TR 125). Although she reported chronic pain, she also said that the pain did not worsen with activity. (TR 125). The plaintiff had been taking Bextra for pain management. (TR 125). The MRI showed that the plaintiff had a Baker's cyst in her right knee and a lateral meniscal tear with significant patella femoral arthritis. (TR 125). Dr. Chharbra offered the plaintiff a clinic visit for the chronic pain or a knee arthroscopy and partial meniscectomy, but the plaintiff refused these treatments. (TR 126).

The plaintiff was again examined by Dr. Stacy on December 13, 2002. (TR 145-147). She started the plaintiff on Neurontin for pain and encouraged her to visit a chronic pain doctor. (TR 145). At that time, the plaintiff was also taking Bextra, Premarin, Nexium, and Lipitor. (TR 145). In addition, Dr. Stacy said that she would try to increase the dosage of Prozac, because it seemed to have helped Ms. Berry's symptoms and helped her to sleep. (TR 145). The plaintiff was tearful during the entire exam, which she attributed to her chronic pain. (TR 146).

A Residual Physical Functional Capacity Assessment performed in June, 2003, found that the plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour

7

workday. (TR 177). The assessment found that the plaintiff's ability to push and pull was limited in her lower extremities. (TR 177). The plaintiff could kneel only occasionally. (TR 179). A psychiatric review technique form stated that the plaintiff's symptoms of depression improved with medication, and that the depression did not severely limit her work-related abilities. (TR 199).

Based on this review of the record, the court concludes that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion, which was adopted by the Commissioner, thoroughly reviews the plaintiff's medical record, including the opinions of her treating physicians, the plaintiff's subjective complaints, and the extent to which such complaints are consistent with the objective medical evidence. The occupational limitations imposed by the Law Judge are consistent with the objective medical evidence and the opinions of Dr. Stacy and Dr. Chharbra. In addition, the opinion is consistent with the two Physical Residual Functional Capacity Assessments. Therefore, the record supports the Commissioner's determination that the plaintiff retains the capacity to perform work at the light level of exertion, and that she can therefore return to her past work as a pulling orders clerk.

Having found substantial evidence to support the Commissioner's determination that the plaintiff is not disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's decision, the court does not suggest that the plaintiff is totally free of symptoms related to her arthritis and depression. However, there is substantial evidence to support the Law Judge's opinion that the plaintiff can perform certain light work roles. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). It

8

appears to the court that the Administrative Law Judge gave full consideration to all the subjective factors in adjudicating the plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolutions of conflicts in the evidence are a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. <u>Richardson v. Perales</u>, <u>supra</u>; <u>Oppenheim v. Finch</u>, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. <u>Laws v. Celebrezze</u>, <u>supra</u>.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 25th day of October, 2005.

*[signature]*

United States District Judge